1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MICHAEL AUSTIN SHIPMAN,                    NO.  C12-1612-RAJ-JPD

9
                          Plaintiff,

10
        v.                                 REPORT AND
                                           RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

12
                          Defendant.

13

14         Plaintiff Michael Austin Shipman appeals the final decision of the Commissioner of the

15 Social Security Administration ("Commissioner") which denied his applications for Disability

16 Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17 of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18 administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19 the Commissioner's decision be AFFIRMED.

20                    I.        FACTS AND PROCEDURAL HISTORY

21         At the time of the administrative hearing, plaintiff was a forty-nine year old man with

22 the equivalent of a high school education.  Administrative Record ("AR") at 36-37.  His past

23 ─────────────────────
          [1] Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the
24 defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly,
and the parties are ordered to update the caption on all future filings with the Court.**

1    work experience includes employment as a cook helper, cook, kitchen supervisor, and data

2    entry clerk.  AR at 41-43, 52-53, 72.  Plaintiff was last gainfully employed as a diner cook at

3    the Trolley House in Idaho.  AR at 40-41.

4           On November 25, 2009, plaintiff protectively filed a claim for SSI payments.  AR at

5    158-61.  On June 10, 2009, he protectively filed an application for DIB.  AR at 151-57.  He

6    alleged an onset date of October 2, 2006.  AR at 11, 158.  During the hearing, however,

7    plaintiff amended his alleged onset date to December 1, 2007.  AR at 34.  Plaintiff asserts that

8    he is disabled due to back pain and mental health problems.

9           The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 82-

10   85, 88-96, 98-107.  Plaintiff requested a hearing, which took place on July 28, 2011.  AR at 32-

11   77.  On September 21, 2011, the ALJ issued a decision finding plaintiff not disabled and

12   denied benefits based on her finding that plaintiff could perform his past relevant work.  AR at

13   11-24.  The Appeals Council denied plaintiff's request for review, AR at 1-6, making the

14   ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. §

15   405(g).  On October 18, 2012, plaintiff timely filed the present action challenging the

16   Commissioner's decision.  Dkt. 5.

17                              II.       JURISDICTION

18          Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

19   405(g) and 1383(c)(3).

20                          III.       STANDARD OF REVIEW

21          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

22   social security benefits when the ALJ's findings are based on legal error or not supported by

23   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

24   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

REPORT AND RECOMMENDATION - 2

1   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

2   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

3   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

4   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

5   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

6   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

7   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

8   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

9   must be upheld.  *Id.*

10   The Court may direct an award of benefits where "the record has been fully developed

11   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

12   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

13   (9th Cir. 1996)).  The Court may find that this occurs when:

14   (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
claimant's evidence; (2) there are no outstanding issues that must be resolved

15   before a determination of disability can be made; and (3) it is clear from the
record that the ALJ would be required to find the claimant disabled if he

16   considered the claimant's evidence.

17   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

18   erroneously rejected evidence may be credited when all three elements are met).

19   IV.     EVALUATING DISABILITY

20   As the claimant, Mr. Shipman bears the burden of proving that he is disabled within the

21   meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

22   Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

23   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

24   expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

REPORT AND RECOMMENDATION - 3

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On September 21, 2011, the ALJ issued a decision finding the following:

1.     The claimant met the insured status requirements of the Social Security Act through March 31, 2011.

2.     The claimant has not engaged in substantial gainful activity since December 10, 2007, the alleged onset date.

3.     The claimant has the following severe impairments: mild lumbar disorder, polysubstance abuse, mood disorder, and post-traumatic stress disorder.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant can occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.  He can occasionally climb ramps and stairs but cannot climb ropes, ladders, or scaffolds.  The claimant must avoid

concentrated exposure to vibrations and hazards.  He can perform work with occasional superficial contact with the public.  In addition, the claimant will be absent 3 or more times per month.

6.      The claimant in unable to perform past relevant work.

7.      The claimant was born on XXXXX, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. [3]

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

11.     If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

12.     If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs but cannot climb ropes, ladders, or scaffolds.  The claimant must avoid concentrated exposure to vibrations and hazards.

13.     If the claimant stopped the substance use, the claimant would be able to perform past relevant work as a cook, cook helper, and kitchen supervisor. This work does not require the performance of work-related activities precluded by the residual functional capacity in the absence of substance use.

14.     The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use.  Because the substance use disorder is

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR at 14-23.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err by rejecting plaintiff's migraine headaches as a severe impairment at step two?

2.    Did the ALJ err in assessing plaintiff's credibility?

3.    Did the ALJ err in assessing the lay witness testimony?

4.    Did the ALJ err in assessing the medical evidence?

5.    Did the ALJ improperly find that substance abuse was material to plaintiff's continuing disability?

Dkt. 15 at 2; Dkt. 16 at

## VII.    DISCUSSION

A.    The ALJ Did Not Err by Rejecting Plaintiff's Migraine Headaches as a Severe Impairment at Step Two

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

REPORT AND RECOMMENDATION - 7

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

At step two, the ALJ found that plaintiff's severe impairments included "mild lumbar disorder, polysubstance abuse, mood disorder, and post-traumatic stress disorder." AR at 14. The ALJ noted that plaintiff reported in his disability report that "he had migraines which limit his ability to work. The medical record shows that in February of 2008 the claimant was diagnosed with migraines, which were treated with Relpax. Subsequent treatment notes show sparse infrequent treatment for the claimant's migraines." AR at 14 (internal citations omitted). For example, "[i]n August of 2009 and May of 2010, the claimant sought treatment for his headaches and on both occasions, he was prescribed Relpax." AR at 14. However, the ALJ found that plaintiff's "[m]igraines, treated with medications[,] do not cause any vocationally relevant limitations. Thus, the undersigned finds that the claimant's migraines are a non-severe impairment." AR at 14.

Plaintiff contends that the ALJ's assertion that treatment notes show only sparse and infrequent treatment for migraines "is simply not true," as he was treated for migraine headaches on February 19, 2008, August of 2009, September of 2009, November of 2009, December of 2009, May of 2010, and September of 2010. Dkt. 15 at 20 (citing AR at 224, 329, 339, 441-43, 507, 524, 551). In addition, plaintiff "testified at the hearing about his headaches, indicating he gets them frequently; they last for hours even after taking Telpax medication; they are very painful; and light and sound make them worse." *Id*. at 21 (citing AR

at 55).  Thus, plaintiff asserts that his migraines have more than a minimal effect on his functioning, and the ALJ erred by failing to include his migraines as a severe impairment.  *Id.*

The Commissioner responds that plaintiff's history of treatment, which the ALJ correctly characterized as "sparse" and "infrequent," was insufficient to establish the severity of his headaches at step two.  Dkt. 16 at 15.  For example, "a March 2009, treatment note shows that Relpax had been prescribed for his headaches, but he had not used them in months."  *Id.* (citing AR at 334).  The Commissioner asserts that many of the records cited by the plaintiff, with the exception of treatment notes, are simply his reports to various providers that he has had migraines in the past or do not reference migraines at all.  *Id.* (citing AR at 441-43).  Finally, the Commissioner points out that an impairment that is effectively treated cannot be the basis for disability, and the effectiveness of medication or treatment is a relevant factor in determining the severity of the plaintiff's symptoms. *Id.* (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Warre ex rel. E.T. IV. V. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)).

The record in this case shows that plaintiff has complained of suffering from occasional but severe migraine headaches, and has been prescribed Relpax to help control his symptoms. AR at 224.  Several treatment notes reflect that plaintiff "[complains of] fierce migraines with intense photophobia" and that he "complains of migraine headaches that further client's difficulty with concentration, organization, and personal motivation."  AR at 339, 507, 551. For example, treatment notes from April 2011 reflects that "he says he still gets Migraine Headaches several times per month that are debilitating – nausea, vomiting, poor tolerance to light and sound stimulate[.]"  AR at 551.

However, the ALJ's conclusion that plaintiff's migraines are adequately controlled by his prescribed medication – when he takes it – appears to be supported by substantial evidence

REPORT AND RECOMMENDATION - 9

in the record.  In March 2009, plaintiff reported that "he had been on Relpax for migraines but

hasn't been on them for months."  AR at 334.  In August 2009, plaintiff reported that he was

experiencing a terrible migraine that had lasted "for a week and a half 'this time,'" but he also

reported that he had not taken anything for it and that "Reflex works for him."  AR at 329.

Similarly, in May 2010, plaintiff reported that he had been experiencing "crippling" headaches

that are "no worse recently, maybe more frequent" with "aura with pressure behind L eye . . .

will get into bed and shut out all light."  AR at 507.  Plaintiff reported that he had been getting

"acupuncture which helps. Continues to go 3 times a week for the past year."  AR at 507.  He

also stated that he had taken Relpax as prescribed "daily in past."  AR at 507.[4]

The Ninth Circuit in *Warre* held that "[i]mpairments that can be controlled effectively

with medication are not disabling for the purpose of determining eligibility for SSI benefits."

*Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).  The ALJ did not

err in this case by concluding that plaintiff's migraines cannot be considered to be severe at

step two based upon treatment notes showing that plaintiff's occasional migraines have been

treated with Relpax, and such treatment appeared to be effective when plaintiff took his

medication.  *See also Allen v. Comm'r of Soc. Sec.*, 498 F.3d Appx. 696, *2 (9th Cir. 2012)

(holding that an ALJ did not err by finding an impairment non-severe at step two where the

evidence in the record indicates that the impairment can be adequately controlled by

medication).

---

[4] Other notes in the record simply reflect that plaintiff reported his history of migraine
headaches.  AR at 441-43.

REPORT AND RECOMMENDATION - 10

B.   <u>The ALJ Did Not Err in Assessing Plaintiff's Credibility</u>

    *1.   Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.  *The ALJ Provided Legally Sufficient Reasons for Finding Plaintiff
Less Than Fully Credible*

The ALJ asserted that she "does not find all of the claimant's symptom allegations to be credible for the following reasons." AR at 19. First, the ALJ noted that plaintiff's "credibility is hurt by inconsistent statements," and cited examples such as his representation in his function report that he uses a case 2-3 times per week when the medical evidence indicates that he has not used one since fall 2008. AR at 20. Contrary to plaintiff's "description of his symptoms and limitations," the ALJ pointed to a "March 5, 2009 [note of] Ms. Diana Thomason, the claimant's therapist at Therapeutic Health Services . . . that the claimant was upset because he attended a pre-vocational class where he was told to put together a resume. The claimant informed Ms. Thomason that he could not even consider going to work while on GAX because he would lose all his benefits but once he gets SSDI he will have more latitude when it comes to working." AR at 21. Similarly, the ALJ noted that although plaintiff reported to "Ms. Thomason that he was attending two different computer classes one through the Mayor's Office and the other with the Seattle Public Library" and that he would provide documentation verifying these classes, he testified at the hearing that he had only considered taking those classes. AR at 21.

The ALJ also found that plaintiff's alleged mental impairments are inconsistent with the objective medical evidence in the record. AR at 20-21. For example, the ALJ noted that a February 20, 2009 mental status exam showed that plaintiff's "thought process was fluent most of the time, his memory was within normal limits, and his concentration was fair," and "subsequent treatment notes from Therapeutic Health Services show that the claimant had a positive response to medication; he slept better and the voices decreased." AR at 20.

REPORT AND RECOMMENDATION - 12

1    Finally, the ALJ noted that examining psychologist Cassandra Clark, Ph.D., determined

2    that plaintiff had malingered during the November 2008 evaluation for DSHS because the Test

3    of Memory Malingering showed that plaintiff did not put forth an adequate effort.  AR at 22,

4    307.  Consistent with this evidence of malingering, the ALJ noted that plaintiff had declined to

5    prepare a resume in a pre-vocational class in March 2009 because he could not consider going

6    to work while receiving state benefits but "once he gets SSDI he will have more latitude when

7    it comes to working."  AR at 21.

8        Plaintiff contends that the ALJ improperly "impugned Mr. Shipman's credibility,

9    asserting first that he resisted creating a resume in March of 2009 because that might affect his

10   receipt of public assistance benefits."  Dkt. 15 at 22 (citing AR at 21).  Plaintiff argues that

11   "the pre-vocational requirement of preparing a resume for an individual unable to work is

12   indeed a fruitless exercise."  *Id.*  In addition, plaintiff argues that the ALJ erred by contending

13   that plaintiff gave an inconsistent statement when he reported in January 2011 that he was

14   attending computer classes, because "he plausibly explained at the hearing that he considered

15   taking the classes but did not actual start them."  *Id.* (citing AR at 21).  Finally, plaintiff argues

16   that "even if Mr. Shipman was able to take the bus, belong to an anti-headache group, and

17   occasionally read and play on the internet as recognized by the ALJ . . . this does not

18   undermine his credibility" because "home activities may not be easily transferable to a work

19   environment where it might be impossible to rest periodically or take medication."  *Id.* at 23

20   (citing AR at 21).

21       The Commissioner responds that "the Ninth Circuit has noted that the presence of

22   affirmative evidence of malingering in the record excuses the ALJ from the . . . requirement of

23   providing clear and convincing reasons, regardless of whether the ALJ makes an affirmative

24   finding of malingering."  Dkt. 16 at 4 (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

REPORT AND RECOMMENDATION - 13

1155, 1160 n.1 (9th Cir. 2008)).  The Commissioner asserts that "this evidence of malingering

alone supported a negative credibility finding."  *Id.* (citing *Benton ex. rel. Benton v. Barnhart*,

331 F.3d 1030, 1040 (9th Cir. 2003) (ALJ can reject claimant's testimony upon finding

evidence of malingering)).  In addition to Dr. Clark's finding that plaintiff's performance on

the Test of Memory Malingering ("TOMM") "suggest that Mr. Shipman is not putting forth

adequate effort," AR at 307, the Commissioner points out that "this type of behavior was not a

one-time event," as the ALJ noted that plaintiff declined to prepare a resume until he was

receiving federal disability benefits.  *Id.* at 5 (citing AR at 21, 411).  Finally, the Commissioner

argues that the ALJ properly relied upon plaintiff's inconsistent statements and activities of

daily living to find plaintiff less than credible.  *Id.* at 5-6.

        While the ALJ need not make a specific finding of malingering, there must be

"affirmative evidence suggesting . . . malingering" for the ALJ to discount a plaintiff's

credibility on this basis absent other clear and convincing reasons.  *Carmickle*, 533 F.3d at

1160 n.1 (distinguishing a statement in *Robbins v. Social Security Admin.*, 466 F.3d 880, 883

(9th Cir. 2006), as an "anomaly").  *See also Valentine v. Commissioner Social Sec. Admin.,*

574 F.3d 685, 693 (9th Cir. 2009) (requiring "affirmative evidence" showing that the claimant

is malingering); *Lester,* 81 F.3d at 834 ("Unless there is affirmative evidence showing that the

claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony

must be 'clear and convincing.'") (citing *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.

1989) (there must be evidence that "affirmatively suggests that the claimant was

malingering")).  As the Commissioner observes, and as defined in the Diagnostic and

Statistical Manual of Mental Disorders 739 (4th ed. 2000) (DSM-IV-TR), malingering entails

the "intentional production of false or grossly exaggerated physical or psychological

1   symptoms, motivated by extern incentives such as avoiding military duty, avoiding work,

2   obtaining financial compensation, evading criminal prosecution, or obtaining drugs."

3           As noted above, the ALJ identified such affirmative evidence of malingering in Dr.

4   Clark's November 2008 psychological evaluation for DSHS, as "Dr. Clark stated that the Test

5   of Memory Malingering showed that the claimant did not put forth an adequate effort.

6   Significant weight is accorded Dr. Clark's concern for malingering."  AR at 22.  Specifically,

7   Dr. Clark administered the Test of Memory Malingering ("TOMM") to plaintiff on November

8   13, 2008, which she described as "a means of systematically assessing clients with complaints

9   or evidence of memory problems, in order to discriminate between those who have genuine

10  memory impairments and those who are malingering."  AR at 307.  Dr. Clark explained that

11  "people with genuine neurological impairment perform well on the TOMM.  Research

12  suggests that a score of less than 45 on the second trial should alert the examiner to the

13  possibility that the client is not putting forth adequate effort.  In addition, a score below chance

14  (25/50) on either trial may suggest an attempt to influence the outcome of the trial in a negative

15  direction."  AR at 307.  On the first trial, plaintiff scored only 24.  AR at 307.  As a result,

16  "Trial 2 was not administered as the score on Trial 1 suggested a lack of effort."  AR at 307.

17  Dr. Clark concluded that "the preceding results suggest that Mr. Shipman is not putting forth

18  adequate effort.  AR at 307.

19          Plaintiff contends that "Dr. Clark's assertion of malingering is an outlier in this case,"

20  and Dr. Clark "readily admits that she did not follow the protocol of the test," presumably

21  because Dr. Clark did not administer Trial 2 based upon the results of Trial 1.  Dkt. 15 at 19

22  (citing AR at 307).  However, the Court finds nothing inadequate about the TOMM test results,

23  nor is there anything in the record to indicate that Dr. Clark improperly administered the test.

24  As Dr. Clark explained, plaintiff's performance on Trial 1 was so poor as to suggest "an

REPORT AND RECOMMENDATION - 15

attempt to influence the outcome of the trial in a negative direction," and therefore Dr. Clark could reasonably conclude it would be pointless to administer Trial 2 because the TOMM had already revealed a lack of effort on plaintiff's part.  AR at 307.

The ALJ did not err in discounting plaintiff's credibility based upon this "affirmative evidence" of malingering.  AR at 22.  As a result, the ALJ was not required to provide other clear and convincing reasons for discounting plaintiff's credibility.  533 F.3d at 1160.  In any event, the Court finds that the ALJ's other stated reasons, such as plaintiff's inconsistent statements, to be clear and convincing reasons to discount plaintiff's credibility supported by substantial evidence in the record.

C.    The ALJ Did Not Err in Assessing the Lay Witness Testimony of
      Plaintiff's Fiancé

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").  If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

REPORT AND RECOMMENDATION - 16

1    The ALJ summarized the testimony of Claudine Phesant, the claimant's fiancé, and noted

2 that "Ms. Phesant reiterated many of the claimant's allegations.  For example, Ms. Phesant stated

3 that she did most of the household chores."  AR at 22.  "She stated that the claimant spends most

4 of his time in the house on the computer, reading a book, or watching television," and that

5 plaintiff is "unable to work because he has a hard time interacting with people, he is prone to

6 depression, and he is forgetful."  AR at 22.  However, the ALJ found that "significant weight

7 cannot be given to the witness' testimony because it, like the claimant's, is simply not consistent

8 with the preponderance of the objective opinions and observations by medical doctors in this

9 case which show that when the claimant is not abusing substances his mental impairments are

10 not severe and he is capable of performing a reduced range of medium work."  AR at 22.  In fact,

11 the ALJ noted that Ms. Phesant's "observations are consistent with an individual who is capable

12 of maintaining concentration and pace.  Lack of disclosure of heroin use is also noted."  AR at

13 22.

14    Plaintiff argues that "the ALJ impermissibly dismisses the testimony of Ms. Kelly

15 Pheasant because she is 'not consistent with the preponderance of objective opinions and

16 observations by medical doctors in this case[.]'"  Dkt. 15 at 23 (citing AR at 22).  Plaintiff

17 asserts that "this is simply not true; her testimony echoed that of the treating doctors."  *Id*.

18    The Commissioner responds that the ALJ properly found that Ms. Phesant's testimony

19 included "inconsistencies and repeated many of Plaintiff's allegations, which were not

20 credible."  Dkt. 16 at 8 (citing AR at 22).  In addition, the ALJ noted that her observations

21 were actually consistent with an individual who is capable of maintaining concentration and

22 pace.  *Id*.  As a result, the Commissioner contends that the ALJ properly provided germane

23 reasons for not according Ms. Phesant's testimony significant weight.  *Id*.

24

REPORT AND RECOMMENDATION - 17

1    As argued by the Commissioner, the ALJ found that Ms. Phesant's testimony

2   "reiterated many of the claimant's allegations" about his daily activities, as well as the reasons

3   why he is unable to work.  AR at 22.  The ALJ reasonably concluded, for the same reasons she

4   found plaintiff's testimony less than credible, that Ms. Phesant's opinion was not entitled to

5   significant weight.  AR at 22.  For example, the ALJ could reasonably conclude that Ms.

6   Phesant's "observations are consistent with an individual who is capable of maintaining

7   concentration and pace," because Ms. Phesant described plaintiff as being able to concentrate

8   enough to spend most of his time playing on the computer, reading books, and watching

9   television.  AR at 22.  Plaintiff fails to establish that such reasoning was not germane or was

10  otherwise insufficient.  *See Valentine*, 574 F.3d at 693-94 (holding that "[i]n light of our

11  conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own

12  subjective complaints, and because Ms. Valentine's testimony was similar to such complaints,

13  it follows that the ALJ also gave germane reasons for rejecting her testimony.").  The ALJ did

14  not err in evaluating Ms. Phesant's testimony.

15         D.     The ALJ Did Not Err in Assessing the Medical Evidence

16                1.     *Standards for Reviewing Medical Evidence*

17         As a matter of law, more weight is given to a treating physician's opinion than to that

18  of a non-treating physician because a treating physician "is employed to cure and has a greater

19  opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

20  747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

21  physician's opinion, however, is not necessarily conclusive as to either a physical condition or

22  the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

23  *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

24  physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

1                  2.      *Susan Caverly, Ph.D.*

2          The ALJ found that "in February of 2009, Susan Caverly, PhD, a DSHS psychological

3   evaluator, found that the claimant had multiple severe limitations in social and cognitive

4   factors.  Dr. Caverly stated that the claimant might never be able to work full time but that he

5   might be able to work part time or engage in other productive activity." AR at 22.  The ALJ

6   gave Dr. Caverly's opinion "little weight . . . because it is inconsistent with the claimant's

7   activities which include watching television, cooking, caring for a cat, washing dishes, talking

8   to his sister once a week, reading, using public transportation, and shopping in stores."  AR at

9   22.  In addition, the ALJ found her opinion "inconsistent with the overall objective medical

10  evidence of record."  AR at 22.

11         Plaintiff contends that the ALJ erred by dismissing the opinions of treating psychologist

12  Dr. Caverly, because "[i]n so doing the ALJ ignores a whole body of important evidence: Dr.

13  Caverly repeatedly diagnosed Mr. Shipman with PTSD, a mood disorder and psychosis, and

14  assigned him a GAF score of 42."  Dkt. 15 at 17 (citing AR at 376, 378, 381, 384, 387).

15  Plaintiff asserts that "she outlined a host of marked and severe limitations associated with the

16  mental health impairments" of depression, anxiety, paranoia, hallucinations, and opiate

17  dependence in remission, and "the ALJ failed to understand that Dr. Caverly was Mr.

18  Shipman's long-time treating psychologist; she was not simply a one-time DSHS evaluator."

19  *Id.* (citing AR at 316).

20         The Commissioner responds that "the ALJ found [that] despite Dr. Caverly's dire

21  prediction in 2009, her assessment was inconsistent with Plaintiff's activities that included

22  watching television, cooking, caring for a cat, washing dishes, talking to  his sister once per

23  week, reading 500-600 page books, using public transportation, and shopping in stores."  Dkt.

24  16 at 10 (citing AR at 22, 49-50, 54, 191-98).  The Commissioner asserts that a claimant's

REPORT AND RECOMMENDATION - 20

activities which conflict with a physician's opinion of limitations is a legitimate basis for the AJ to consider in determining the weight that physician's opinion deserves.  *Id.* (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989)).  The Commissioner further asserts that "the ALJ also found Dr. Caverly's assessment was contradicted by other evidence in the record, particularly the assessments of Gary L. Nelson, Ph.D, a reviewing psychologist at the State agency who reviewed Plaintiff's records on January 19, 2010, and opined Plaintiff had no medically determinable mental impairments besides a history of opiate addiction, which was being treated with methadone."  *Id.* at 11 (citing AR at 21, 463-75).

Although the ALJ may have failed to acknowledge that Dr. Caverly also acted as a treating provider for the plaintiff, in addition to acting as a "DSHS psychological evaluator," the Court cannot agree with plaintiff's statement that the ALJ "dismisses" and "ignores" Dr. Caverly's opinions.  Dkt. 15 at 17.  Plaintiff's arguments also focus on the functional limitations described in Dr. Caverly's February 2009 DSHS evaluation form, which was the document that the ALJ discussed in the written decision and afforded "little weight."  AR at 22.  As described above, the ALJ found that the extremely severe limitations assessed by Dr. Caverly were contradicted by plaintiff's self-reported daily activities. Without more, plaintiff has failed to show that his ability to engage in daily activities inconsistent with Dr. Caverly's assessed limitations was not a specific and legitimate reason for the ALJ to discount Dr. Caverly's opinions.

The Court does note that the ALJ's bare assertion that Dr. Caverly's opinion was "inconsistent with the overall objective medical evidence of record" lacks the requisite specificity.  AR at 22.  As the Ninth Circuit held in *Embrey*, an ALJ's assertion that "medical opinions are not supported by sufficient objective findings . . . does not achieve the level of

REPORT AND RECOMMENDATION - 21

1    specificity our prior cases have required, even when the objective factors are listed seriatim.

2    The ALJ must do more than offer his conclusions.  He must set forth his own interpretations

3    and explain why they, rather than the doctors', are correct."  *Embrey*, 849 F.2d at 421.  While

4    this Court is not in a position to assess whether or not objective evidence does, in fact, support

5    Dr. Caverly's opinion, the Court finds that the ALJ has failed to adequately explain her

6    conclusion that it does not.  However, because the ALJ provided another specific and

7    legitimate reason to discount Dr. Caverly's opinions, this error was "inconsequential to the

8    ultimate nondisability determination," and therefore, harmless.  *Molina v. Astrue*, 674 F.3d

9    1104, 1115 (9th Cir. 2012).

10                          3.     *Rolf Kolden, M.D.*

11           The ALJ asserted that plaintiff was psychologically evaluated by psychiatrist Rolf

12   Kolden, M.D., on April 6, 2010 in connection with his application for DSHS benefits.  AR at

13   22.  Specifically, the ALJ noted that "Dr. Kolden stated that the claimant had multiple severe

14   limitations in cognitive and social factors," but the ALJ gave his opinion "little weight because

15   his opinion appears to be based primarily on the claimant's subjective report of his symptoms,

16   which as previously discussed are not always credible."  AR at 22.

17           Plaintiff argues that the ALJ accorded Dr. Kolden's opinion "little weight" because he

18   evaluated plaintiff "in connection with his application for DSHS benefits."  Dkt. 15 at 17

19   (citing AR at 22).  Plaintiff asserts that the ALJ "impermissibly dismissed Dr. Kolden's well-

20   founded diagnoses of PTSD, a possible psychotic disorder, shifting disturbing moods, and

21   polysubstance abuse in remission" on this basis.  *Id.* (citing AR at 340).  Finally, plaintiff

22   points out that Dr. Kolden "did complete[] a DSHS evaluation, opining that Mr. Shipman

23   suffers from severe anxiety with social withdrawal and panic attacks, marked paranoia, and

24

1    marked auditory hallucinations," and assessed severe limitations that would impair plaintiff's

2    functioning and his ability to work.  AR at 502-04.

3            The Commissioner responds that plaintiff's arguments mischaracterized the ALJ's

4    actual reason for discounting Dr. Kolden's opinion, which was that Dr. Kolden's opinion

5    appeared to be based primarily upon plaintiff's subjective report of his symptoms.   Dkt. 16 at

6    12 (citing *Morgan*, 169 F.3d at 602).  As discussed above, the ALJ did not consider plaintiff to

7    be credible.  The Commissioner asserts that this is a specific and legitimate reason to discount

8    Dr. Kolden's opinion, particularly in light of the fact that there was evidence of malingering in

9    this case.  *Id.*

10           The Court agrees with the Commissioner.  A physician's opinion premised on a

11   claimant's subjective complaints may be discounted where the record supports the ALJ in

12   discounting the claimant's credibility.  *Tonapetyan*, 242 F.3d at 1149.  *See also Morgan*, 169

13   F.3d at 602 (providing that "a physician's opinion of disability 'premised to a large extent upon

14   the claimant's own account of his symptoms and limitations' may be disregarded where those

15   complaints have been 'properly discounted.'").  Here, the ALJ reasonably concluded that Dr.

16   Kolden's evaluation largely reflected plaintiff's self-reported symptoms.  AR at 502-04.  For

17   example, Dr. Kolden noted that "client has reported feeling flushed and breaking out in sweats

18   while being in public," "client reports hearing voices, possibility enforced by past abuse, as

19   well as from long standing polysubstance abuse," and "client has trouble with crowded spaces,

20   experiences sweating, shaking, visions of past abuse."  AR at 502.  As explanation for his

21   assessed GAF score of 40, Dr. Kolden stated "Client has admitted to having extreme difficulty

22   with day to day functioning and has reported self medicating in the past to alleviate psycho-

23   social problems."  AR at 503.

24

REPORT AND RECOMMENDATION - 23

Especially in light of the ALJ's finding of "affirmative evidence" of malingering in this case, the ALJ could reasonably decline to afford significant weight to Dr. Kolden's opinions because they appeared to be based on plaintiff's self-reported symptoms, rather than Dr. Kolden's own observations.   This was a specific and legitimate reason for the ALJ to reject Dr. Kolden's opinions, supported by substantial evidence in the record.

### 4.   *Other Source Opinions*

Plaintiff contends that the ALJ also erred by disregarding the opinions of the "other source" medical opinions of "psychiatric nurse Stradling and counselors Anlanger and Lurie" who all assessed plaintiff with a GAF score of 40-42 during the relevant period.  Dkt. 15 at 19. Specifically, plaintiff asserts that "Mr. Shipman continued to receive mental health treatment from various [Community Psychiatric Clinic ("CPC")] treatment team members with continual complaints of anxiety, panic attack, and sleep problems."  Dkt. 15 at 18 (citing AR at 319-28, 338-40, 481-91, 578-92).  For example, plaintiff asserts that he "received treatment at CPC from mental health counselor Kirsten Stradling; her October 2010 diagnoses were consistent with Dr. Kolden's including the GAF score of 41.  Similarly, [DSHS psychological evaluator] Jay Lurie also treated Mr. Shipman, completed an evaluation report in February 2011, diagnosed him with PTSD and opioid dependence in sustained remission, and assigned him a GAF of 41."  *Id.* (citing AR at 575, 582).  Mr. Anlanger, MSW evaluated plaintiff on July 20, 2009, and assigned dim a GAF of 40.  AR at 327.  Finally, plaintiff asserts that "Dr. Belinda Gustafson with CPC, who also treated Mr. Shipman, questioned whether he suffers from borderline intellectual functioning."  AR at 584-85.  Plaintiff argues the "ALJ dismisses all of the evidence of Mr. Shipman's mental health providers on the basis that 'the objective medical findings are not consistent with the limitations he alleges.'"  *Id.* at 19.  Plaintiff asserts that the CPC counselors "all assessed Mr. Shipman with a GAF score of 40-42 over the period of issue

1    here," and the ALJ "ignored the overwhelming evidence that Mr. Shipman's complaints and

2    presentation were consistent." *Id*.

3          The Commissioner responds that "the ALJ did not specifically mention each of these

4    providers, but instead elected to rely on the opinions of the State agency reviewing

5    psychologists whose opinions were entitled to more weight than the lay opinions/observations

6    of Plaintiff's counselors." Dkt. 16 at 12 (citing AR at 22).  In addition, the Commissioner

7    argues that "[b]ecause they were not acceptable medical sources, their judgments about the

8    nature and severity of Plaintiff's impairments did not qualify as medical opinions and were not

9    entitled to the weight Plaintiff claims they should have been given." *Id.*  The Commissioner

10   asserts that "any error in not specifically rejecting [these other source opinions] is harmless as

11   it was inconsequential to the determination that Plaintiff was not disabled." *Id*. at 13.

12         As a threshold matter, the Court notes that the ALJ did discuss the opinions of Jay

13   Lurie, HLHC, but afforded them "little weight" because "Mr. Laurie stated that he had limited

14   contact with claimant and could not provide any further assessments," apart from an opinion

15   that plaintiff "was moderately limited in his ability to understand, remember, and persist in

16   tasks following simple instructions."  AR at 22.  The Court considers limited contact with the

17   plaintiff to be a germane reason for the ALJ to discount Mr. Lurie's opinions, in light of Mr.

18   Lurie's own statement to that effect.

19         The Court agrees with plaintiff that the ALJ erred by failing to discuss the lay witness

20   opinions of Nurse Kirsten Stradling, Counselor Anlanger, and Counselor Gustafson.  Nurse

21   Stradling completed a "Community Psychiatric Intake Summary" with respect to plaintiff on

22   December 6, 2010.  AR at 578-83.  The interview included a mental status exam, as well as

23   plaintiff's descriptions of his symptoms, medical history, incarceration/legal history, substance

24   abuse history, developmental/psycho-social history, cultural history, vocational history, and

REPORT AND RECOMMENDATION - 25

1    educational history, among other topics.  The majority of the form contains direct quotations of

2    the plaintiff describing his problems and his history.  AR at 578-83.  Nurse Stradley diagnosed

3    plaintiff with PTSD and opioid dependence in remission and assigned him a GAF score of 41.

4    AR at 582.  She also completed a "Community Psychiatric Clinic Recovery and Transition

5    Plan" for plaintiff, which describes plaintiff's self-reported goals and objectives for treatment.

6    AR at 586-89.

7        Similarly, Mr. Anlanger, MSW, conducted an intake interview and completed an

8    "Intake Summary" similar to the one completed by Nurse Stradling on July 19, 2009.  This

9    summary was largely comprised of plaintiff's self-reported description of his symptoms and

10   history.  AR at 323-28.  Mr. Anlanger also completed a "Community Psychiatric Clinic

11   Recovery and Transition Plan" describing plaintiff's self-reported goals and objectives for

12   mental health treatment.  AR at 319-22.

13       Dr. Belinda Gustafson, who does appear to be an acceptable medical source and not

14   simply an "other source" medical provider, completed a two-page psychiatric evaluation of the

15   plaintiff on December 1, 2010, which mostly included plaintiff's complaints and self-reported

16   psychological history, criminal history, and medical history.  AR at 584-85.  Ms. Gustafson's

17   only comments under "observation/mental status" were that plaintiff had long hair in a ponytail

18   and wore a tee shirt, sweat pants, and coat, and that he was pleasant, open, constricted affect,

19   and his thoughts were "coherent."  AR at 585.

20       In light of the ALJ's finding of "affirmative evidence" of malingering in this case, as

21   well as the ALJ's rejection of treating doctors' opinions that relied heavily on plaintiff's self-

22   report, the Court agrees with the Commissioner that the ALJ's failure to discuss this "other

23   source" evidence (as well as the brief evaluation by Dr. Gustafson) was harmless.  *See Molina*,

24   674 F.3d at 1114-15 (holding that where the ALJ gave reasons for rejecting plaintiff's

REPORT AND RECOMMENDATION - 26

testimony regarding her symptoms that were equally relevant to the similar testimony of the lay witnesses, these reasons support a finding that the lay witness testimony was similarly not credible, and the ALJ's failure to discuss that lay witness testimony at all was harmless).  As discussed above, the ALJ provided legally sufficient reasons for rejecting the opinion of treating physician Dr. Kolden, because he relied heavily upon plaintiff's self-report, which the ALJ did not find to be credible.  This reason is "equally relevant" to this evidence, and therefore the ALJ's failure to discuss this evidence in detail was harmless under *Molina.  See Molina*, 674 F.3d at 1122 ("Because the ALJ had validly rejected all the limitations described by the lay witnesses . . . we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

        E.      The ALJ Did Not Err by Finding Substance Abuse to be Material to Plaintiff's Continuing Disability

              *1.    Legal Standard*

A claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  Where drug or alcohol abuse ("DAA") are implicated in a disability proceeding, an ALJ must first conduct the five-step sequential evaluation process without separating out the impact of alcoholism or drug addiction.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  If the ALJ finds the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis regarding DAA under 20 C.F.R. §§ 404.1535 or 416.935.  *Id.*

However, it is error for an ALJ to conclude that DAA precludes an award of benefits prior to applying the five-step process first.  For example, in *Bustamante*, the Ninth Circuit

considered whether "it is error for an ALJ to determine that a claimant's mental impairments are 'the product and consequence of his alcohol abuse' prior to making a determination that the claimant is disabled under the five-step inquiry." *Id.* at 954-55.  The Court held that "the ALJ erred by concluding at step two that Bustamante's 'behavioral and emotional conditions' were 'the product and consequence of his alcohol abuse and not an independently severe or disabling impairment.' . . . The ALJ should have proceeded with the five-step inquiry without attempting to determine the impact of Bustamante's alcoholism on his other mental impairments." *Id.* at 955.

If the ALJ does find the claimant to be disabled and there is medical evidence of the claimant's drug addiction or alcoholism, then the ALJ must apply the sequential-evaluation process a second time (the "DAA analysis" or the "separating-out" analysis) to determine whether plaintiff would still be disabled if he or she stopped using drugs and alcohol. *Id.*  "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability.  If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1535(b).

2.      *The ALJ Did Not Err by Conducting a DAA Analysis and Concluding that DAA was Material*

The ALJ found that plaintiff's severe impairments included PTSD, a mood disorder, polysubstance abuse, and a mild lumbar disorder.  AR at 14.  At step five, the ALJ found that "based on all of [the plaintiff's] impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." AR at 17.  The ALJ then performed the sequential evaluation process a second time,

1    and found that "if the claimant stopped the substance use, the claimant would have the residual

2    functional capacity to perform medium work[.]"  AR at 18.  Further, the ALJ found that "if the

3    claimant stopped the substance use, the claimant would be able to perform past relevant work

4    as a cook, cook helper, and kitchen supervisor" as generally performed.  AR at 23.  The ALJ

5    therefore concluded that plaintiff's "substance use disorder is a contributing factor material to

6    the determination of disability because the claimant would not be disabled if he stopped the

7    substance use . . . [T]he claimant has not been disabled . . . at any time from the alleged onset

8    date through the date of this decision."  AR at 23.

9         Plaintiff contends that the ALJ erred by finding that plaintiff's severe impairments

10   included polysubstance abuse, and that substance use was material to the finding of disability.

11   Dkt. 15 at 15 (citing AR at 14).  Specifically, plaintiff asserts that the evidence shows that he

12   has been clean and sober since July 2008 when he began methadone treatment with

13   Therapeutic Health Services ("THS"), with three one-time-only relapses, and the "relevant

14   period" for his claim should be considered to be June 2008 (one year prior to his 2009 SSI

15   application) through the date of the ALJ's decision.  *Id.* (citing AR at 341, 362, 396, 398).

16   Plaintiff points out that all of the other monthly THS urinalysis tests have been negative for all

17   substances apart from his methadone, and his treating doctors have all opined that he suffers

18   from polysubstance abuse in full-sustained remission.  *Id.*  Plaintiff argues that the ALJ

19   therefore erred because she should have been evaluating what limitations he had absent drug

20   and alcohol abuse, and "he continued to suffer from debilitating limitations associated with his

21   psychiatric impairments, demonstrating that drugs were not material to his ongoing disability."

22   *Id.* at 16.

23        The Commissioner responds that "[p]laintiff does not dispute his use of drugs from his

24   amended alleged onset date of December 10, 2007, through July 2008, when he began

REPORT AND RECOMMENDATION - 29

treatment at Therapeutic Health services . . . and admits relapsing three times since he started

treatment, first in August 2008, with cocaine; second in October 2008, with morphine; and

third in October 2009, with cocaine and morphine." Dkt. 16 at 17 (citing AR at 396).  In

addition, the Commissioner acknowledges that plaintiff's urinalysis tests have only been

positive for methadone, which is used to treat his heroin addiction.  *Id.* (citing AR at 566, 604-

07).  As a result, the Commissioner contends that the ALJ's materiality finding and DAA

analysis was appropriate in this case.  *Id.* at 18.  Even if plaintiff's drug abuse was not material,

the Commissioner asserts that plaintiff has failed to show that any error was harmful because

the ALJ properly "relied upon the opinions of the State agency psychologists who opined that

the only medically determinable impairment supported in the record was opiate addiction" and

therefore "it was appropriate for her not to assess any additional limitations."  *Id.*

Plaintiff responds that the ALJ's drug abuse finding was harmful because "it permeates

the entire decision and provides the foundation for the adverse credibility decision and the

ALJ's mischaracterization of the medical evidence."  Dkt. 17 at 2.  Plaintiff asserts that his

"psychiatric illnesses did not abate after he stopped using drugs," and therefore the ALJ's

conclusion about the materiality of drug abuse "provides the lynchpin for the ALJ's adverse

credibility determination and her disregard of the weight of the medical evidence."  *Id.* at 3.

The Court cannot agree with the plaintiff that the ALJ erred by finding plaintiff's

substance abuse disorder to be material to the determination of disability in this case.  AR at

23.  Plaintiff testified that he was using drugs between plaintiff's December 1, 2007 amended

alleged onset date, and at least July 2008, when plaintiff began his methadone treatment.  AR

at 34-35.  In fact, the ALJ asked plaintiff directly during the administrative hearing if he was

"using drugs then in 2007, December?"  AR at 40.  Plaintiff responded, "Yes, your honor.

Somewhere in that time, yes."  AR at 40.  When the ALJ asked when plaintiff stopped,

REPORT AND RECOMMENDATION - 30

plaintiff responded that he was able to stop "when I was accepted into THS, the Methodone clinic, I made a choice to stop, stop all of it." AR at 40. The ALJ accepted this testimony, and found in her written decision that "the record indicates that with the exception of a few relapses at the beginning of his treatment the claimant stopped using substances in August of 2008." AR at 18.

Plaintiff argues that June 2008 should be considered the beginning of the "relevant period" in this case, because regardless of a claimant's alleged disability onset date, benefits would be retroactive for only one year from plaintiff's filing date. Dkt. 15 at 15 fn. 5. However, even if the Court were to accept plaintiff's argument about the relevant period, the fact remains that plaintiff relapsed on drugs in August 2008, October 2008, and October 2009. *See* Dkt. 17 at 2. Thus, the Court does not find that the ALJ erred by finding plaintiff's polysubstance use to be a "severe impairment" during the relevant period, and conducting a DAA analysis to determine if plaintiff would still be disabled in the absence of substance use.

Finally, the Court agrees with the Commissioner that even if a DAA analysis was not necessary in this case, the error was harmless. The latter part of the ALJ's written decision properly "separated out" any consideration of substance use, and directly addressed whether plaintiff would still be disabled. For all the reasons discussed above, the ALJ concluded that plaintiff was still capable of performing his past relevant work. Moreover, as described in detail above, the ALJ did not solely rely on plaintiff's substance use as the reason to discount plaintiff's credibility in this case, as argued by the plaintiff. Accordingly, plaintiff has failed to show that the ALJ's finding that plaintiff's substance use disorder is a contributing factor material to the determination of disability was not supported by substantial evidence.

1

VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that the Commissioner's decision be

3   AFFIRMED, and this matter be DISMISSED with prejudice.  A proposed order accompanies

4   this Report and Recommendation.

5          DATED this 9th day of July, 2013.

6

7          _____
           JAMES P. DONOHUE
8          United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 32